# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 87

APRIL TERM, A.D. 2026

August 6, 2026

GUY MORRISON III,

Appellant
(Petitioner),

v.

S-26-0021

TAMI HINSON-MORRISON,

Appellee
(Respondent).

*Appeal from the District Court of Campbell County*
*The Honorable Matthew F.G. Castano, Judge*

*Representing Appellant:*
Cassie Craven, Longhorn Law Limited Liability Company, Cheyenne, Wyoming.

*Representing Appellee:*
Codie D. Henderson, Nicholas J. Spanos, Davis & Cannon, LLP, Sheridan, Wyoming.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Chief Justice.**

[¶1]    Guy Morrison III (Husband) challenges the district court's order finding him in contempt for frustrating he and Tami Hinson-Morrison's (Wife) filing of a joint federal tax return for the 2021 tax year as required by the court's February 2023 order, which was fully incorporated into the Decree of Divorce (Decree). We affirm.

## ISSUES

[¶2]    We restate the issues:

> 1. Whether the district court's finding on the timing of Husband's contemptuous conduct was clearly erroneous.
>
> 2. Whether the district court abused its discretion by finding Husband in contempt.
>
> 3. Whether the district court imposed obligations exceeding the scope of the Decree.

## FACTS

[¶3]    This appeal stems from a divorce decree we previously reviewed and affirmed. *See generally Morrison v. Hinson-Morrison*, 2024 WY 96, 555 P.3d 944 (Wyo. 2024). Husband and Wife married in 2007. In May 2022, Husband prepaid $140,000.00 (Prepayment) to the Internal Revenue Service (IRS)—his estimated tax liability for the 2021 tax year. Wife filed for divorce a few months later.

[¶4]    Shortly thereafter, both Wife and Husband filed separate tax returns for the 2021 tax year. The parties' tax preparer, on his own accord, allocated the Prepayment to Wife when filing her 2021 taxes. While the divorce was pending, Husband filed a motion for allocation of funds, requesting the Prepayment be redirected to his 2021 tax year obligation. In February 2023, the district court ruled on the motion for allocation of funds and ordered the parties to file an amended joint tax return for the 2021 tax year "as soon as reasonably possible." The court also determined "[t]he parties shall have joint and several liability for any tax assessments associated with" the 2021 joint tax return.

[¶5]    The court held a bench trial later that year. In its August 2023 Decision Letter (Decision Letter), the court stated "[a]s previously ordered, the parties shall file joint tax

1

returns for the years of 2021 and 2022. Each party shall be responsible for their share of any tax obligation in proportion to their individual income." The court subsequently issued the Decree, fully incorporating its Decision Letter by reference.

[¶6]     After we affirmed the Decree in its entirety, Wife filed a motion for an order to show cause, arguing Husband failed to comply with the district court's order requiring the parties to file a joint tax return for the 2021 tax year. Wife alleged on June 15, 2023, the parties' tax preparer filed the required joint tax return. But the same day, he also filed an amended individual tax return for the 2021 tax year for Husband. Wife attached Husband's amended 2021 individual income tax return, filed as "married filing separately," to her motion. On that amended return, Husband claimed the Prepayment. The amended tax return was signed with a pin number and dated June 15, 2023.

[¶7]     The tax preparer's June 2023 filing of two 2021 tax year returns resulted in at least four filed 2021 tax returns—three individual returns and one joint return—causing the Prepayment to remain "somewhere in IRS purgatory." Through communications with the IRS, Wife learned an identity theft flag existed on her return, which limited her access to her tax information. Husband also complained of complications in accessing his IRS information and issues related to Wife's innocent spouse claim.[1] The parties later retained Mr. Harris, a certified public accountant, to review the tax transcripts and instruct the parties regarding how best to remedy the duplicative returns. Mr. Harris allegedly instructed Husband to request the IRS apply the Prepayment to the joint return so the IRS would know to process that return.

[¶8]     After the evidentiary contempt hearing, the district court expressly found Husband's testimony about the innocence of his conduct not credible. It held Husband in contempt and ordered him to "withdraw any and all other tax returns filed for the 2021 tax year with the exception of the married filing jointly [return]" within 60 days. Husband timely appealed.

## STANDARD OF REVIEW

[¶9]     On review:

> [w]e do not interfere with an order holding a party in civil contempt in a domestic relations case absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion. To review the district court's

---

[1] Wife testified the IRS originally instructed her to file an innocent spouse form because she paid her share of the taxes. The IRS later rejected that claim because she was married to Husband.

exercise of discretion, we evaluate whether the court could reasonably conclude as it did.

*Mascaro v. Mascaro*, 2024 WY 45, ¶ 8, 547 P.3d 321, 324 (Wyo. 2024) (citation modified). We do not set aside a district court's findings of fact unless they are clearly erroneous. *Anderson v. Messinger*, 2026 WY 42, ¶ 28, 587 P.3d 519, 527 (Wyo. 2026). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Messinger*, 2026 WY 42, ¶ 28, 587 P.3d at 527 (quoting *Leeks Canyon Ranch, LLC v. Jackson Hole Hereford Ranch, LLC*, 2025 WY 63, ¶ 31, 569 P.3d 1120, 1130 (Wyo. 2025)).

## DISCUSSION

[¶10] Civil contempt requires the moving party to

> show by clear and convincing evidence that: 1) there was an effective court order requiring certain conduct by the alleged contemnor; 2) the contemnor had knowledge of the order; and 3) the alleged contemnor willfully disobeyed the order. In order to find a willful violation, the order violated must be clear, specific and unambiguous.

*Heimer v. Heimer*, 2021 WY 97, ¶ 15, 494 P.3d 472, 477 (Wyo. 2021) (quoting *Breen v. Black*, 2020 WY 94, ¶ 11, 467 P.3d 1023, 1027 (Wyo. 2020)). Clear and convincing evidence is "evidence that would persuade a finder of fact that the truth of the contention is highly probable." *Mascaro*, 2024 WY 45, ¶ 9, 547 P.3d at 324 (quoting *Evans v. Sharpe*, 2023 WY 55, ¶ 16, 530 P.3d 298, 305 (Wyo. 2023)). If the moving party proves the elements of contempt, "the burden then shifts to the person charged with contempt to show he or she was unable to comply." *Heimer*, 2021 WY 97, ¶ 16, 494 P.3d at 477 (quoting *Breen*, 2020 WY 94, ¶ 12, 467 P.3d at 1027).

[¶11] Husband argues the district court relied on pre-Decree conduct, and erred in holding him in contempt because he did not willfully frustrate the parties' joint return filing. He also argues the court imposed obligations not contained in the Decree. We address his challenges in turn.

3

## I. The district court's finding on the timing of Husband's conduct was not clearly erroneous.

[¶12] Husband asserts the district court's contempt order improperly relied on pre-Decree conduct. He represents the court based its conclusions on his individual return initially filed in October 2022, shortly after Wife filed for divorce. He ignores the pre-Decree order on his motion for allocation of funds, entered in February 2023, and alleges the court held him "in contempt for violating an order, before the order exist[ed.]" He implies the contempt order admonished his conduct related to the October 2022 individual tax return.

[¶13] It is clear from the record both Wife and Husband filed individual tax returns for the 2021 tax year in 2022. Then, in late 2022, Husband asked the court to determine the proper allocation of Husband's Prepayment. On February 2, 2023, the court did so, ordering the parties to file a joint tax return for 2021 and finding the parties jointly and severally liable for any tax assessments associated with the joint return. After the entry of this order, but before trial, a joint tax return for 2021 was filed, and simultaneously or very close thereto, an additional married filing single tax return for Husband was filed. The Decision Letter twice states the court previously ordered the parties to jointly file 2021 taxes, and the Prepayment was to be allocated to their joint tax liability. Thus, there exists clear and convincing evidence an order directing Husband to act existed at the time of his conduct. *Heimer*, 2021 WY 97, ¶ 15, 494 P.3d at 477. We conclude the district court's finding on the timing of Husband's conduct is not clearly erroneous.

## II. The district court did not abuse its discretion by holding Husband in contempt.

[¶14] The district court's contempt order acknowledged the existence of a clear court order, found Husband's testimony regarding his role in filing subsequent tax returns not credible, and found Husband frustrated the parties' filing of a joint 2021 tax return. Husband does not assert he lacked knowledge of the order, and his testimony at the hearing illustrated his knowledge of the order and its directives. *See Shindell v. Shindell*, 2014 WY 51, ¶ 12, 322 P.3d 1270, 1274 (Wyo. 2014) (determining defendant's testimony at the contempt hearing and the extensive course of proceedings established her knowledge of the applicable orders). Husband also does not contest the existence of his later filed, amended individual tax return for the 2021 tax year. Husband instead argues the Decree lacked sufficient clarity to render his non-compliance willful.

**A.     Wife established the existence of a clear order and Husband's willful non-compliance.**

[¶15]   Husband asserts because the Decree did not specify a process by which the parties were to correct the previously filed single returns, the Decree is not sufficiently clear, and thus his alleged violation was not willful.[2] A violation can only be willful if the order is "clear, specific and unambiguous." *Heimer*, 2021 WY 97, ¶ 15, 494 P.3d at 477 (quoting *Breen*, 2020 WY 94, ¶ 11, 467 P.3d at 1027). Wife asserted Husband violated Section H of the Decision Letter, which the Decree expressly incorporates, and requires: "***As previously ordered***, the parties shall file joint tax returns for the years of 2021 and 2022. Each party shall be responsible for their share of any tax obligation in proportion to their individual income." (emphasis added).

[¶16]   The Decree's directive is clear that a joint tax return must be filed for the 2021 tax year. The record further shows the parties hired Mr. Harris to assist in remedying the duplicative tax filings, and Husband did not abide by Mr. Harris's recommendations. Husband's actions and inactions are evidence he understood the Decree directives. *See Kleinpeter v. Kleinpeter*, 2017 WY 76, ¶ 19, 397 P.3d 189, 195 (Wyo. 2017) (concluding mother's conduct evidenced her understanding of the order terms). The district court did not abuse its discretion when it determined the order was sufficiently clear.

[¶17]   As for his willfulness, Husband argues the district court improperly limited the scope of his testimony at the contempt hearing, thereby "cut[ting] off context that demonstrated lack of intent." He argues because the IRS administrative process is outside of his control, his alleged non-compliance with the district court's order was not willful. Wife argues Husband's amended single return and his failure to take any corrective action illustrate his willfulness.

[¶18]   At the contempt hearing, Husband testified about the parties' individual tax returns filed in 2022 and the Prepayment. The court noted it previously ruled on the issue of the individual tax returns and allocation of the Prepayment, so "[t]he only question is whether [its] order ha[d] been carried out, and if it hasn't, whether that was not a willful act on behalf of" Husband. Husband testified he signed a joint return and stated he knew it was filed. When discussing his amended tax return filed the same day as the joint return, Husband testified he was unaware of the return and did not know where it came from. As for the parties' work with Mr. Harris to correct the duplicative returns, Husband explained there was confusion regarding returns for 2021 and 2022, and though he sent

---

[2] Though collateral estoppel likely bars Husband's claim the court lacked authority to compel him to file a joint tax return, *see Mitchell v. Rust*, 2023 WY 47, ¶ 25, 529 P.3d 1062, 1070 (Wyo. 2023), our case law makes clear "trial courts have broad discretion to justly and equitably divide marital property and debt in a divorce." *Begley v. Begley*, 2020 WY 77, ¶ 14, 466 P.3d 276, 282 (Wyo. 2020). This discretion includes ordering a party to sign a joint tax return. *Begley*, 2020 WY 77, ¶¶ 14–18, 466 P.3d at 282–83.

clarifying information to the IRS, he did not hear anything back. Husband also testified Mr. Harris recently told him to file another return, ask for a refund of the Prepayment from the IRS, and then file another return.

[¶19] The court found Husband's testimony on the "issue of having done nothing to frustrate the completion" of the court's order not credible, especially given the timing of the filing of the joint return and Husband's amended single return.[3] The court further explained "one . . . should have known that [the filing of the amended single return] would frustrate the processing of [the] married filing jointly [return]." It found Husband's willfulness in frustrating the processing of the joint return was shown by the testimony to a clear and convincing standard.

[¶20] Under our standard of review, we need only determine whether the district court could have reasonably concluded as it did. *Mascaro*, 2024 WY 45, ¶ 8, 547 P.3d at 324. Husband's inconsistent testimony, and the court's determination as to his credibility, supports the conclusion his actions frustrating the court's directive were willful, especially once the parties hired Mr. Harris to help correct the 2021 tax year filings. Therefore, the court did not abuse its discretion when it found by clear and convincing evidence Husband willfully frustrated completion of its order.

**B.      Husband did not show an inability to comply with the order.**

[¶21] Husband next argues the district court "issued a contempt order without making findings that [Husband] has the ability to comply[.]"[4] Husband misconstrues the parties' burdens. Once Wife proved Husband willfully disobeyed the district court's order, the burden shifted to Husband to prove he could not comply with the order. *Heimer*, 2021 WY 97, ¶ 16, 494 P.3d at 477 (quoting *Breen*, 2020 WY 94, ¶ 12, 467 P.3d at 1027); *see also Fowles v. Fowles*, 2017 WY 112, ¶¶ 34–35, 402 P.3d 405, 413–14 (Wyo. 2017) (finding party in violation of order failed to present sufficient evidence of his inability to comply and therefore the court did not abuse its discretion by finding him in contempt). Importantly,

---

[3] "[O]ur rule is that the credibility of witnesses, the weight of the evidence, and conflicts in the evidence must be resolved by the finder of fact." *Bennett v. Bennett*, 2024 WY 7, ¶ 12, 541 P.3d 1092, 1096 (Wyo. 2024) (quoting *JLK v. MAB*, 2016 WY 73, ¶ 28, 375 P.3d 1108, 1114 (Wyo. 2016)).

[4] Husband also complains the contempt order lacks findings of fact specific to the "causal connection" between his actions and the frustrated completion of the order. He cites to no authority requiring such a casual connection, and ignores the court's explanation from the contempt hearing, wherein the court stated it found Husband's testimony was not credible, "particularly, relying upon the timing of the joint 2021 tax return and the married filing singly going in very close in time." *See Connors v. Connors*, 769 P.2d 336, 347 (Wyo. 1989) (finding the contemnor's alleged inability to comply with the order unpersuasive given his continued failure to comply with the order and his lack of meaningful attempts to purge himself of a potential contempt sanction).

6

> [w]hile it is true that the inability of an alleged contemnor, without fault on his part, to render obedience to an order or decree of court is a good defense to a charge of contempt, . . . [s]uch a rule is only applicable where, after using due diligence, the contemnor is still not able to comply with the order.

*Connors v. Connors*, 769 P.2d 336, 347 (Wyo. 1989) (internal citations omitted).

[¶22] Husband's rambling contempt hearing testimony centered on his IRS correspondence and his belief Wife's initial separate tax return was the problem. Contrary to the evidence regarding Mr. Harris's recommendation, Husband testified the IRS told him to file another single return and let them keep the money. He further claimed he had called the IRS probably "50 times" but because of what Wife and the tax preparer did, everything got "screwed up." The court found Husband's testimony was not credible.

[¶23] In his brief, Husband argues IRS procedures render him unable to comply, but he does not articulate, nor did he show below how, despite his due diligence, these procedures prevented him from complying with Mr. Harris's instruction and the court's order. Without this connection, Husband fails to meet his evidentiary burden. As such, the court did not abuse its discretion by holding Husband in contempt despite his alleged inability to comply with the order.

### III. The district court did not exceed the scope of the Decree by imposing obligations not contained in the Decree.

[¶24] The purpose of a civil contempt order is "to compel obedience of the court order or to compensate the litigant for injuries sustained from the disobedience." *Jensen v. Milatzo-Jensen*, 2013 WY 83, ¶ 7, 304 P.3d 969, 971 (Wyo. 2013) (quoting *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 500 (10th Cir. 1980)). "A court has the inherent power to punish contempts of court and discretion to determine what sanction is appropriate." *Stephens v. Lavitt*, 2010 WY 129, ¶ 18, 239 P.3d 634, 639 (Wyo. 2010); *see Mascaro*, 2024 WY 45, ¶ 14, 547 P.3d at 325 ("The trial court has continuing jurisdiction in divorce matters to enforce its orders through contempt proceedings, the purpose of which is to obtain the contemnor's compliance."). We do not interfere with a court's use of that discretion "absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion." *Mascaro*, 2024 WY 45, ¶ 8, 547 P.3d at 324 (quoting *Heimer*, 2021 WY 97, ¶ 17, 494 P.3d at 478).

[¶25] Husband challenges whether the district court could 1) order monetary sanctions in the form of Husband's liability for tax interest and penalties due to the delay and 2) order the withdrawal of the previously filed single tax returns. We address each in turn.

7

**A.    The district court did not abuse its discretion by ordering monetary sanctions.**

[¶26]   "A court can require the contemnor to pay compensatory damages to the party that was injured by the noncompliance, based on evidence of actual loss." *Mascaro*, 2024 WY 45, ¶ 13, 547 P.3d at 325. "A court may award a judgment for money damages as a compensatory contempt sanction, rather than utilizing the more coercive alternative of ordering a defendant to pay and then perhaps incarcerating him or imposing other sanctions if he is able to comply and fails to do so." *Meckem v. Carter*, 2014 WY 52, ¶ 25, 323 P.3d 637, 645 (Wyo. 2014) (quoting *Walker v. Walker*, 2013 WY 132, ¶ 39, 311 P.3d 170, 178 (Wyo. 2013)); *see also Walters v. Walters*, 2011 WY 41, ¶¶ 24, 249 P.3d 214, 229 (Wyo. 2011) (acknowledging the availability of compensatory civil sanctions). Nonetheless, any such award "must be based upon evidence of actual loss; otherwise, it will be considered speculative and arbitrary." *Meckem*, 2014 WY 52, ¶ 25, 323 P.3d at 645.

[¶27]   Wife testified she paid her proportionate share of the 2021 taxes, and the delay in the filing and acceptance of the joint tax return resulted in penalties and interest totaling approximately $50,000.00 over the Prepayment amount. The district court ordered Husband to pay the interest and penalties after it found Husband's conduct frustrated the parties' attempts to comply with the Decree. Because the evidence tied the penalties and interest to Husband's conduct—both in the simultaneous returns and his alleged failure to follow Mr. Harris's instructions—the district court's award was neither speculative nor arbitrary, and the court did not abuse its discretion when it ordered Husband to pay the interest and penalties resulting from his conduct. *Meckem*, 2014 WY 52, ¶ 25, 323 P.3d at 645.

**B.    The district court did not abuse its discretion by ordering the "withdrawal" of returns.**

[¶28]   Husband states internal IRS procedures hinder his ability to "withdraw" the single tax returns. In so arguing, Husband relies on the IRS's Internal Revenue Manual, citing provisions instructing IRS employees how to handle multiple filings and identity theft flags. Because of the Internal Revenue Manual's directives to IRS employees, Husband argues he cannot actually withdraw the single returns; rather, the IRS is the sole entity with the ability to act upon and correct the duplicative returns. Wife agrees the language of the contempt order could be clearer in describing the steps Husband must take to remedy the tax return concerns. She argues, however, the context of the contempt order enables Husband to understand his duties under the order.

[¶29]   While the contempt order's directive to "withdraw" the single tax returns is inexact considering IRS internal procedures, we have previously reviewed the context in

8

which a contempt order was issued to interpret a district court's contempt directive. *See Bullock v. Bullock*, 2014 WY 131, ¶ 23, 336 P.3d 136, 142 (Wyo. 2014) (acknowledging "the order [was] not as clear as it might have been," and looking to the show cause hearing to provide context to interpret the contempt order's unclear language).

[¶30]  At the show cause hearing, Wife requested the court "require the parties to file a joint return for [2021.]" Wife's counsel discussed Mr. Harris's recommendation for resolution: instruct the IRS to apply the Prepayment to the joint return so the IRS may process that return. Counsel also described Wife's exact request: "our request is [the court] order [Husband] to instruct the IRS to apply the $140,000 prepayment to the [2021] joint marital return so it can be processed" and "instruct [Husband] to take whatever steps are necessary above and beyond that to assure that the [2021] marital return is timely filed and processed." Given this context, the court's "withdraw" directive cannot reasonably be read so narrowly that it precludes any alternative procedures rendering the joint return the operative return and resulting in the IRS processing and applying the Prepayment to the joint return. The court therefore did not exceed the scope of the Decree when it required Husband to "withdraw" the single returns.

## CONCLUSION

[¶31]  We conclude the district court's factual finding as to the timing of Husband's actions was not clearly erroneous. We further conclude the court did not abuse its discretion by finding Husband in contempt, or exceed the scope of the Decree when holding Husband in contempt.

[¶32]  Affirmed.